Argued December 11, 1969, reversed and remanded June 24,
petition for rehearing denied July 28, 1970

BOSTON INSURANCE COMPANY, *Respondent, v.*
CAREY, *Defendant,* and MORRISON OIL
COMPANY, *Appellant.*

471 P2d 782

*Gerald R. Pullen,* Portland, argued the cause and filed a brief for appellant.

*Donald H. Burnett,* Portland, argued the cause for respondent. With him on the brief were Bullivant, Wright, Johnson, Pendergrass & Hoffman.

Before PERRY,* Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE and HOLMAN, Justices.

---

* Perry, C.J., retired June 1, 1970.

McALLISTER, J.

This is a subrogation action tried without a jury in which the court entered judgment for plaintiff and defendant Morrison Oil Company appeals. The only error assigned is the failure to grant defendant's motion for a nonsuit.

There is no dispute about the controlling facts. Barbara Jordan owned a service station on S.E. Mc-Loughlin Boulevard in Portland, which she leased to George B. Carey, doing business as Carey Oil Company. Carey assigned his lease to Morrison Oil Company, a corporation, and Morrison sublet the premises to Samuel O. Barnett. On March 8, 1966, while the lease, assignment and sublease were all in effect the premises were badly damaged by fire.

The plaintiff Boston Insurance Company paid Jordan $7,999.30 for the fire damage to the service station and brought this action to recover from Carey and Morrison. Boston relies solely on the Jordan-Carey lease and does not charge either defendant with negligence. Barnett is not a party.

Morrison Oil Company's motion for a nonsuit challenged the sufficiency of the evidence to support a judgment for plaintiff.[1] Whether the evidence is sufficient depends on the interpretation of the lease.

---

[1] In the words of the statute, the test is whether plaintiff has proved a "cause sufficient to be submitted to the jury." ORS 18.230 (3). It was held in In re Herdman's Estate, 167 Or 527, 530, 119 P2d 277 (1941) that when a law action is tried to the court without a jury, the same rules as those applied in jury cases govern motions for involuntary nonsuits. The court held on appeal that plaintiff had made out a case "sufficient to be submitted to a jury" and that the motion should have been denied. 167 Or at 534.

The controlling provision of the lease is contained in paragraph 12 as follows:

> "* * * In case the demised premises is rendered unfit for operation as a drive-in gasoline service station by reason of fire, storm or explosion, or any other cause, no rental shall accrue or is to be paid from the beginning of such unfitness until the property is put in tenantable condition by Lessor. If Lessor defaults in making any such repairs or restoration, Lessee may at his option either terminate this lease upon written notice to Lessor or Lessee may have the necessary repairs done for the account of Lessor, and Lessor shall pay promptly the expense thereof."

It is admitted that the fire left the premises "unfit for operation," that Jordan made no repairs and that the lessee did not have the premises repaired "for the account of" Jordan.

█ In our opinion paragraph 12 of the lease made the cost of restoring the premises to tenantable condition the obligation of the lessor. The paragraph first provides that the rent shall be abated "until the property is put in tenantable condition by Lessor." It next provides for the contingency of a "default" by the lessor in restoring the premises—in case of such default lessee may elect to terminate the lease or may repair "for the account of Lessor." If lessee elects to repair lessor "shall pay promptly the expense thereof." Since the duty to pay for repairs if they are made by either lessor or lessee is placed solely on the lessor she is not entitled to reimbursement by the lessee. If she has no claim against the lessee neither has her insurer.

■ Plaintiff relies primarily on a portion of paragraph 7 of the lease reading as follows:

> "* * * The Lessee covenants to keep the demised premises in good condition and repair all damage to the demised premises caused by the operations of the Lessee and redeliver the premises to Lessor at the end of his term in good condition, reasonable wear and tear excepted. * * *"

The quoted provision would impose liability on defendant if we could ignore paragraph 12. Plaintiff argues that the two provisions conflict and that paragraph 7 controls. On the contrary, we think that paragraph 12, being specific, is controlling over the general provisions of paragraph 7. The applicable rule is stated in 3 Corbin on Contracts 176, § 547:

> "If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former. When parties are dealing with particulars, with a few objects, describing them specifically and individually, they are more likely to know what they are talking about and to say what they mean. The concrete is more readily understandable than the abstract and more likely to be accurately expressed."

We quoted a part of the foregoing statement in *Waterway Terminals v. P. S. Lord*, 242 Or 1, 22-23, 406 P2d 556, 13 ALR3d 1 (1965). See, also, *Rayburn et ux v. Crawford et ux*, 187 Or 386, 396, 211 P2d 483 (1949); Restatement, Contracts § 236(c); 4 Williston on Contracts (3d ed 1961) 743, § 619.

■ Plaintiff argues that paragraph 12 is general rather than specific because it applies to damage by "fire, storm or explosion, or any other cause." We think

the "any other cause" on which plaintiff relies must be construed to mean other major casualties such as fire, storm or explosion which would usually render a service station unfit for use and which would usually be insured against. The rule of *ejusdem generis* applies, *State v. Brantley*, 201 Or 637, 645, 271 P2d 668 (1954). See, also, *Rayburn et ux v. Crawford et ux*, supra, 187 Or at 395-397.

■ Plaintiff contends that because the service station was a "constructive total loss" the lease was terminated by operation of law; that paragraph 12 does not apply; and that paragraph 7, requiring defendants to repair all damage caused by their operation, is controlling. Plaintiff relies on *Eggen et ux v. Wetterborg et al*, 193 Or 145, 155, 237 P2d 970 (1951), but fails to mention that the lease in that case contained no "provision respecting the contingency of fire or other casualty that might render the demised premises unfit for tenancy." That case is not apposite. We read paragraph 12 to apply to all fires serious enough to render the premises unfit for operation as a gasoline service station. Admittedly the fire involved in this case was such a fire.

■ Plaintiff also relies in part on paragraph 16 of the lease reading as follows:

"The Lessee covenants and agrees to indemnify and save Lessor harmless from any and all claims, demands, suits, actions, judgments and recoveries for or on account of any damage or injury, including death, to the property or person of the Lessee, his agents, servants, sublessees or assigns or any other party or parties caused by or due to the negligence of any one in the operation of the demised premises."

Plaintiff would interpret the quoted provision to require the lessee to pay the lessor for all damage to her property caused by the negligence of anyone in the operation of the premises. If so interpreted, it would seem to require lessee to indemnify lessor against a claim made by her against herself. Assuming that paragraph 16 could be interpreted as suggested by plaintiff it would, like paragraph 7, be a general provision and, in the case of damage to the service station by fire, controlled by the more specific language of paragraph 12.

We have considered the other contentions made by plaintiff and find them equally without merit. We believe the court erred in denying defendant's motion for nonsuit. The case is remanded to the court below for entry of a judgment of involuntary nonsuit.